397 A.2d 424

**COMMONWEALTH of Pennsylvania**

v.

**Robert Lee HARRIS, Appellant.**

Superior Court of Pennsylvania.

Submitted March 13, 1978.

Decided Jan. 31, 1979.

1. Pa.Crimes Code, 18 Pa.C.S.A. Section 908 (1973).

112

114

Arthur K. Dils, Harrisburg, for appellant.

Marion E. MacIntyre, Second Assistant District Attorney, Harrisburg, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

CERCONE, President Judge:

Appellant, Robert Lee Harris, was found guilty by a jury of unlawful possession of a controlled substance with intent to deliver[1] and unlawful possession.[2] Following the denial of post-verdict motions for a new trial and arrest of judgment, appellant was sentenced to imprisonment for not less than two and one-half nor more than five years. This appeal followed.

The facts are essentially as set forth in the opinion of the lower court. On January 15, 1976, Trooper George Wynn of the Pennsylvania State Police was conducting surveillance on a home located at 2217 Penn Street, Harrisburg, Pennsylvania. The residence located at 2217 Penn Street is owned by the appellant who is a paraplegic from the waist down. During the course of his surveillance Trooper Wynn observed a man, not the appellant, on the third floor of 2217 Penn Street open a front window and place on the ledge of

1. Uniform Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, No. 64, § 13, as amended 35 P.S. § 780–113(a)(30).

2. Uniform Controlled Substance, Drug, Device and Cosmetic Act, supra, 35 P.S. § 780–113(a)(16).

the adjacent home (2215 Penn Street) two packages. Trooper Wynn immediately contacted the owner of the adjacent home at 2215 Penn Street which was vacant and asked permission to enter the premises. Permission was received from the property owner and upon going to the third floor of the 2215 Penn Street residence Trooper Wynn removed two aluminum foil wrapped packages that were located on the windowsill. Upon examination of the substances contained in the packages, Trooper Wynn concluded that the packages contained controlled substances—heroin and another unknown white powder substance. Trooper Wynn directed a fellow trooper to remain at the scene while he took the package to Pennsylvania State Police headquarters. There a latent fingerprint was removed from one of the packages. The latent fingerprint was then compared with rolled ink impressions of appellant and an identification of his fingerprint was made. A search warrant and an arrest warrant were obtained and Trooper Wynn returned to 2217 Penn Street that same day. Trooper Wynn entered 2217 Penn Street and found appellant in his second floor bedroom where drug paraphernalia including syringes, bottle cap cookers with residue, and empty glassine packets, similar in size to the packets found on the adjacent ledge, were also discovered. Trooper Wynn then arrested the appellant for possession with intent to manufacture or deliver a controlled substance. Other persons were in the home at 2217 Penn Street at the time of the search, but the unidentified male who placed the two packages on the ledge of the adjacent building was not found to be present.

On appeal, appellant contends that at trial the prosecutor elicited testimony implying that appellant had engaged in criminal activity other than those offenses charged in the indictment, that the introduction of evidence of drug paraphernalia was irrelevant and prejudicial and that the Commonwealth failed to meet its burden of proving each element of the offenses charged beyond a reasonable doubt. These contentions are without merit and for the reasons stated below, we affirm the order of the lower court denying a new trial.

 Appellant first argues that testimony about the latent fingerprint lifted from the aluminum foil package containing the controlled substance and the comparison of this latent fingerprint with the rolled ink impression of his fingerprint indicated to the jury that the accused had a prior criminal record. The law is well settled in Pennsylvania that the prosecution may not introduce evidence of defendant's prior criminal conduct as substantive evidence of his guilt of the present charge. *Commonwealth v. Rivers,* 238 Pa.Super. 319, 357 A.2d 553 (1976). The purpose of this rule is "to prevent the conviction of an accused for one crime by the use of evidence that he has committed other unrelated crimes, and to preclude the inference that because he has committed other crimes he was more liable to commit the crime for which he is being tried. The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty and thus effectively to strip him of the presumption of innocence." *Commonwealth v. Allen,* 448 Pa. 177, 182, 292 A.2d 373, 375 (1972), quoting *Commonwealth v. Trowery,* 211 Pa.Super. 171, 173–74, 235 A.2d 171 (1967).

 The test of whether evidence which indicates that the accused has a prior criminal record is admissible does not depend on a balancing technique weighing the prejudicial effect against the probative value, but rather on the fact that Pennsylvania law has specifically limited the admission of such evidence to certain limited exceptions. *Commonwealth v. Clark,* 453 Pa. 449, 309 A.2d 589 (1973). For example, evidence of a different crime may be introduced to prove a common scheme, motive or design between two or more crimes. *Commonwealth v. Foose,* 441 Pa. 173, 272 A.2d 452 (1971); *Commonwealth v. Wable,* 382 Pa. 80, 114 A.2d 334 (1955). It is also permissible in some circumstances to impeach the defendant's credibility by proof of a prior criminal record. *Commonwealth v. Katchmer,* 453 Pa. 461, 309 A.2d 591 (1973); *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973). Other than certain limited exceptions, it is reversible error to introduce evidence of distinct crimes

against an accused in a prosecution for a separate offense. "Therefore, if the testimony can be fairly characterized as conveying to the jury, either expressly or by reasonable implication, the fact of prior criminal offenses, a reversal of a verdict of guilt must result in the event that the Commonwealth is unable to establish that the evidence was within one of the recognized exceptions." *Commonwealth v. Clark,* supra, 453 Pa. 461, 309 A.2d at 591. The operative question is whether the jury "could *reasonably* infer from the facts presented that the accused had engaged in prior criminal activity." *Commonwealth v. Groce,* 452 Pa. 15, 19–20, 303 A.2d 917, 919 (1973). (Emphasis added.); See also *Commonwealth v. Cluck,* 252 Pa.Super. 228, 381 A.2d 472 (1977); *Commonwealth v. Taylor,* 460 Pa. 616, 334 A.2d 261 (1975).

In the instant appeal, nothing in the record of the trial implies that appellant's fingerprints taken by the rolled ink method and used in the comparison with the latent fingerprint lifted from the aluminum foil package were the result of prior criminal activity. During the trial the district attorney, defense counsel and trial judge had discussed the problem of how to avoid any inference that appellant's fingerprints were already in the possession of the State Police on the date of appellant's new arrest. It was at this point in the trial that it was decided there would be no mention of the date the comparison was made. Thus, how and when the police obtained the fingerprint of the accused in order to make a comparison with the latent fingerprint was intentionally omitted by the prosecution.[3] Because the testifying police officer did not state a specific date as to

---

3. Indeed had the prosecution elicited testimony as to how and when the police had obtained the rolled ink impression of appellant's fingerprints with which the latent fingerprint was compared, reversible error would have been committed. Furthermore, the facts of the instant case must be contrasted with the situation in which a reference made at trial to a fingerprint or photograph of the accused is found to have raised a reasonable inference of prior criminal activity on the part of the accused. In that situation, the Commonwealth must attempt to explain the police possession of the accused's fingerprint or photograph in order to negate the inference of prior criminal activity or prejudicial error will be found. See *Commonwealth v. Taylor,* 460 Pa. 616, 334 A.2d 261 (1975).

when the fingerprints were taken, no *reasonable* inference could be drawn by the jury that the fingerprints were taken as a consequence of prior criminal activity. Under the facts as presented in this case the jury could not reasonably infer that the accused had engaged in prior criminal activity and thus prejudicial error was not committed.

Appellant's second contention is that the introduction of evidence of drug paraphernalia in the accused's bedroom at the time of his arrest was irrelevant and prejudicial and, therefore, improperly admitted. It is clear that the Commonwealth must prove each element of a crime by relevant evidence beyond a reasonable doubt. *Commonwealth v. Walzack*, 468 Pa. 210, 360 A.2d 914 (1976); *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). It is also clear that the requisite intent of an offense is one of the elements of the kind of crime involved here. *Commonwealth v. Walzack*, supra; *Mullaney v. Wilbur*, supra. In the instant trial, the Commonwealth was bound to prove beyond a reasonable doubt that appellant possessed a controlled substance with the intent to manufacture or deliver it. It was for the purpose of circumstantially proving such an intent on the part of the appellant that the evidence of drug paraphernalia was introduced at trial.

Analysis of the admissibility of evidence necessarily begins with the threshold inquiry as to its relevance and probative value. *Commonwealth v. Walzack*, supra, 468 Pa. at 218, 360 A.2d 914. In *Walzack*, the Pennsylvania Supreme Court cited with approval the test for relevance as set forth by Wigmore and McCormick. Relevance is defined by Wigmore in terms of two axioms, "None but facts having rational probative value are admissible," and, "All facts having rational probative value are admissible, unless some specific rule forbids." 1 Wigmore, Evidence § 9–10 at 289–95 (3rd Ed. 1940). McCormick states that "[r]elevant evidence then, is evidence that in some degree advances the inquiry, and thus has probative value, and is prima facie admissible." McCormick, Evidence § 185 at 438 (2nd Ed. 1972).

In the instant case, evidence of drug paraphernalia, including empty glassine packets, syringes and bottle cap cookers with residue, found during the course of the execution of the search warrant at appellant's residence was introduced by the prosecution. This evidence was admitted in order to show the connection between the controlled substance placed on the windowsill of the adjoining residence by someone on the third floor of appellant's residence and appellant's activities in controlled substances originating on his premises. The drug paraphernalia found in his bedroom was certainly within appellant's control and thus relevant to disclose appellant's intent to control and deliver.

Appellant's final argument is that because other persons had been in his residence at various times and because he is paralyzed from the waist down resulting in limited mobility, the evidence was not sufficient to show that he had been in possession of the drugs seized from the window sill of the adjoining building. It is well settled that following a verdict of guilty on the evidence at trial, the Commonwealth is entitled to have the evidence considered in a light most favorable to it. *Commonwealth v. Lee*, 460 Pa. 374, 333 A.2d 773 (1975); *Commonwealth v. Blevins*, 453 Pa. 481, 309 A.2d 421 (1973); *Commonwealth v. Rankin*, 441 Pa. 401, 272 A.2d 886 (1971).

Illegal possession is a crime unique to the individual which, by definition, can only be committed by the possessor. Proving guilt by association is unacceptable. *Commonwealth v. DeCampli*, 243 Pa.Super. 69, 364 A.2d 454 (1976). If the defendant is not shown to have literal possession of the controlled substance, the Commonwealth may sustain its burden by showing constructive possession. When as in the present case, another individual has equal access to the drugs, a conviction can be based on joint constructive possession. *Commonwealth v. Chenet*, 237 Pa. Super. 226, 352 A.2d 502 (1976). The critical determination of dominion involves whether the person charged had the

power of control and the intent to exercise that control over the contraband. *Commonwealth v. Cash,* 240 Pa.Super. 123, 367 A.2d 726 (1976); *Commonwealth v. Carter,* 230 Pa.Super. 236, 326 A.2d 480 (1974). Constructive possession may properly be based on a consideration of the totality of circumstances which attend a particular case. *Commonwealth v. Jenkins,* 231 Pa.Super. 266, 332 A.2d 490 (1974). A defendant's mere presence is at least a factor to be considered as part of the totality of circumstances proving knowledge of the presence of the contraband which is essential to a finding of intention to exercise control over the substance. *Commonwealth v. Carter,* supra, 230 Pa.Super. at 239, 326 A.2d 480.

In the instant case, appellant's fingerprint was found on the aluminum foil package in which was wrapped the controlled substances. Drug paraphernalia was found in the appellant's bedroom which is used in packaging and use of the controlled substances. Also, the drug paraphernalia was found in close proximity to appellant's personal effects, a circumstance which can be considered in determining the sufficiency of the evidence. See *Commonwealth v. Updegrove,* 223 Pa.Super. 7, 296 A.2d 854 (1972). The appellant had the intent to control the controlled substances as evidenced by the drug paraphernalia found in his bedroom. He also had the power of control through his accomplice. A consideration of the totality of circumstances which attend the instant case indicates that a finding by the jury of joint constructive possession by the appellant and an unknown male was amply supported by the evidence.

Accordingly, judgment of sentence is affirmed.

PRICE and SPAETH, JJ., concur in the result.

JACOBS, Former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.